UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA ALLEYNE, JANINE HERMAN, RAMONA CACERES, YONAS BERHE, ASTRID COUSINS, and SAMARA GRECO, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>CONSTELLATION CULINARY GROUP; GALAXY RESTAURANTS CATERNG GROUP, LP; STARR EVENTS; ELIOR NORTH AMERICA; and any other related entities and individuals,<br><br>Defendants. | Case No.: 1:25-cv-10032<br><br>**CLASS ACTION COMPLAINT**<br><br>***JURY DEMAND*** |

Plaintiffs Virginia Alleyne, Janine Herman, Ramona Caceres, Yonas Berhe, Astrid Cousins, and Samara Greco (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF THE CLAIM

1.      This is a class action brought by catering service professionals who performed work for Constellation Culinary Group, Galaxy Restaurants Catering Group, LP, and Starr Events, which are owned, operated, and managed by Elior North America, along with other unknown entities and individuals (collectively, "Constellation"), alleging violations of the New York State Labor Law § 194 ("NY Equal Pay Act"), New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL"), New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 et seq. ("NYCHRL"), and the Equal Pay Act of 1963, 29

U.S.C. 206 including subsection (d).

2.      Plaintiffs previously entered into a Tolling Agreement with Constellation from April 26, 2022, through December 3, 2025, by which the Parties withdrew the prior action without prejudice and explored the exchange of data and documents – and the Parties retained respective experts to assess the scope of these claims and potential damages. During that tolling period, as defined by the Tolling Agreement, the statute of limitations on the claims was tolled for Plaintiffs including similarly situated individuals and for Defendants to explore resolution. On Nov. 3, 2025, Plaintiffs terminated the tolling agreement and waited 30 days to refile their claims.

3.       Constellation promotes itself and its catering brand as "a culinary group dedicated to providing best-in-class dining experiences for one-of-a-kind events, cultural centers, professional settings, restaurants, and cafes."[1]

4.      As part of its operations, Constellation hires, staffs, and employs catering service workers like Plaintiffs to perform work at numerous events in or around New York City, including at prominent locations like the Carnegie Hall, New York Historical Society, New York Botanical Garden[2] and various other private or public event spaces. Constellation also operates other food and beverage service locations under its various brands.

5.      Constellation has operated under different labels and brands including as Starr Catering, Constellation, Abigail Kirsch, and several other brands – through various corporate entities and corporate structures that are not known to Plaintiffs given the nature of the employee-employer relationship as catering workers. Plaintiffs refer to the entire corporate umbrella of catering services as Constellation herein.

---

[1] https://constellationculinary.com/our-company/
[2] https://nybgevents.com/about-constellation-culinary/

6.     To the detriment of Plaintiffs and similarly situated workers, Constellation promoted and discriminated against minority, female, older and other workers in protected classes, including by (1) paying them lower rates, (2) offering them fewer promotions including to captain positions, (3) offering them fewer shifts – and offering them fewer shifts in captain positions, (4) requiring them to travel greater distances to their work place including in the Bronx and other outer borough locations, (5) placing them in fewer positions to succeed and earn tips, and (6) by otherwise treating them in a discriminatory manner based on their status in a protected class including systemically ranking minority, female, and older workers lower in Defendants' system.

7.     By this, Plaintiffs and similarly situated workers were harmed, mistreated, damaged, and discriminated against in their profession and chosen occupation.

8.     Minority, female, and older service workers like Plaintiffs at Constellation have received less compensation and have been promoted less frequently than their younger white counterparts as a result of Constellation's discriminatory policies, patterns, and/or practices.

9.     The violations of its minority, female, and older employees' rights are systemic, are based upon company-wide policies and practices, and are the result of unchecked bias that pervades Constellations' corporate culture, which promotes younger white male employees above all others.

10.     Mistreatment and discrimination directed at minority, female, and older service workers have not been isolated or exceptional incidents, but rather are a regular and predictable result of Constellation's company-wide policies and practices.

11.     Furthermore, these policies, patterns, and/or practices are no accident. Rather, they are part and parcel of a corporate culture that feeds off biases and outdated thinking.

12.    Constellation, through its agents and employees, has implemented these company-wide policies and practices in order to pay their younger white employees more money than their minority, female, and older counterparts, to promote them more frequently, and to give them more opportunities for gainful employment and success.

13.    These company-wide policies and practices have had an adverse impact on the compensation, promotion, and performance of minority, female, and older employees.

14.    For example, Hispanic workers earned significantly and statistically less, including several dollars less per hour, than their non-minority counterparts. The same is statistically true for African Americans and females.

15.    Further, when Plaintiffs questioned these policies and practices, they were retaliated against by being offered less work, were gradually squeezed from the work calendar, and/or were given less desirable or profitable work opportunities.

16.    Accordingly, in addition to bringing this action on their own behalf, Plaintiffs also bring this action on behalf of a class of similarly situated current and former service workers and individuals employed by Constellation ("the Classes," as defined below), to end Constellation's discriminatory policies and/or practices and to make the Class whole.

## PARTIES

### Plaintiffs

#### *Virginia Alleyne*

17.    Plaintiff Virginia Alleyne is a 61-year-old African American woman who lives and resides in New York County, in the State of New York, and is a citizen of the United States.

18.    Plaintiff Alleyne was employed by Constellation and its predecessor entities from 2015 to 2020 in various roles associated with service work, including primarily as a banquet and

catering server at Defendants' catered events and venues.

19.     During her employment with Constellation, Plaintiff Alleyne performed work in New York at various catered events and venues for Defendants.

20.     Plaintiff Alleyne came to be employed by Constellation with over 30 years of prior catering and hospitality experience, but she was hired at a rate of $25 per hour.

21.     During Plaintiff Alleyne's employment of five years, she received no promotions and finished her employment making $25.75 per hour.

22.     For over five years, Plaintiff Alleyne was paid less as an hourly rate than her young male white counterparts – even though they had less experience in the service and hospitality industry.

23.     At the same time that Plaintiff Alleyne was hired by Constellation, Kyle Crew and Zach Barnes, two younger and lesser-experienced white employees were hired. Both were promoted and paid more on an hourly basis than Plaintiff Alleyne. In fact, Barnes received an increase to $40 per hour, received a promotion to "captain," and received more frequent shifts. Crew was promoted, was given more frequent shifts, and was paid more for the same or substantially similar type of work.

24.     Because Plaintiff Alleyne was no less than 50 years old and an African American female at the time of her employment with Constellation, she was frequently assigned jobs at the New York Botanical Garden in the Bronx and away from the more prestigious and profitable Manhattan-based events and functions. These Bronx-based jobs required greater travel costs, resulted in lesser tips, and resulted in her earning even less than an equivalent hourly rate.

25.     Frequently during Plaintiff Alleyne's employment, the minority workers made up a greater percentage of the staff at Bronx Botanical Gardens than they did at the Manhattan-based

venues.

26.     Frequently during Plaintiff Alleyne's employment, a significantly smaller percentage of minority workers were assigned to the private catered events located at the Central Park West apartment building.

27.     When asked about the Central Park West location and events, Defendants' agent tasked with scheduling, John Chacon (Booking Manager for Constellation) stated, that those are "extremely particular" clients, which Plaintiff Alleyne understood as pretext that Defendants were primarily to utilize younger white male employees for working those events.

28.     Plaintiff Alleyne received positive reviews from guests and management during her employment, but she was never offered the position of captain, was never promoted to bartender, and was passed over for promotions by less experienced younger male white counterparts. Constellation has no application process or formal mechanism for such promotions; promotional decisions are left at the discretion of John Chacon (Booking Manager for Constellation), and Gunna Zimmerman (Regional Director of Services for Constellation).

29.     In 2019 or 2020, Zimmerman mistook Plaintiff Alleyne for another African American woman. After Plaintiff Alleyne identified herself, Zimmerman demanded to know her age. Plaintiff Alleyne understood this question to be directed at her to suggest that Defendants preferred young service workers at their catered events. Upon learning Plaintiff Alleyne's age, Zimmerman then began scheduling her to work substantially fewer events.

30.     On several occasions thereafter, Plaintiff Alleyne complained to Zimmerman about the lesser volume of work she was receiving.  Zimmerman refused to give Plaintiff Alleyne more work opportunities and sometimes made transparently pretextual excuses.  For example, on one occasion, Zimmerman claimed Plaintiff Alleyne could not work an event because she had a

pink streak in her hair. Plaintiff Alleyne offered to cover it up, but Zimmerman refused. Plaintiff Alleyne later found out that at this same event, a young white female with hair that was completely dyed blue was permitted to work the event. After making such complaints to Zimmerman, Plaintiff Alleyne received even fewer work opportunities.

31.    Plaintiff Alleyne was paid significantly less as an hourly rate of pay than her substantially similar younger white, male counterparts.

32.    Throughout her employment at Constellation, Plaintiff Alleyne failed to receive promotions, job opportunities, and pay commensurate with her experience in the industry and with her experience and performance with Defendants.

*Janine Herman*

33.    Plaintiff Janine Herman is a 56-year-old white female who lives in Kings County, New York, and is a citizen of the United States.

34.    Prior to joining Constellation, Plaintiff Herman had worked in the catering and hospitality business as a captain for 16 years.

35.    Plaintiff Herman was employed by Constellation from 2012 to 2020 and worked over 500 catered events in New York primarily as a server.

36.    For her work at Constellation, Plaintiff Herman's starting rate as a server was $25 per hour. Over the course of 8 years, small increases brought that rate to $28.25 per hour.

37.    Although Plaintiff Herman was eventually allowed to work as a captain in 2016, her captain rate was only increased to $33.00 per hour, an amount that was substantially less than what Constellation paid to similarly situated but less experienced younger white captains. Plaintiff Herman did not receive a raise until 2019, at which time her pay was increased to $38.00 per hour. Younger white captains received starting pay rates between $40 and $45 per hour.

38.     On or around Oct. 5, 2019, Plaintiff Herman spoke with Zimmerman regarding an August staff meeting in which some members of the staff accused Constellation and its management of discrimination due to unequal pay. During that conversation, Zimmerman acknowledged that recently hired younger white employees, including Kelly Riley, Zach Barnes, and Zach Shotwell were being compensated at a rate of $40 per hour. Greyson Lewis, also a younger white male, was paid $45 per hour or more from the start as a captain, even though more experienced older or minority captains were typically making only $35 to $37 per hour. Zimmerman indicated to Plaintiff Herman that the decisions stemmed from a policy and practice above her control.

39.     Despite her significant experience in the industry and working for Constellation, Plaintiff Herman failed to receive $40 per hour and was frequently required to work events as a server despite excellent reviews from both clients and supervisors for her work as a captain.

40.     Plaintiff Herman was paid significantly less as an hourly rate of pay than her substantially similar male and younger counterparts.

41.     Throughout her employment at Constellation, Plaintiff Herman failed to receive promotions, job opportunities, and pay that would commensurate with her experience in the industry and with her experience and performance with Defendants.

*Ramona Caceres*

42.     Plaintiff Ramona Caceres is a 57-year-old Latino woman who lives and resides in Saddle Brook, New Jersey, and is a citizen of the United States.

43.     Plaintiff Caceres has been employed by Constellation and its predecessor entities from 2014 through 2025, primarily as a server.  However, Plaintiff Caceres also filled various roles while employed at Constellation such as captain, co-captain, bartender, bridal attendant and coat

check. She was involved in the events from setting up the event, to serving/bartending at the event and breaking down the event.

44.     Plaintiff Caceres worked at most New York locations as well as many out-of-town events in Philadelphia. Plaintiff Caceres has worked over 750 events throughout her time at Constellation.

45.     Prior to her employment at Constellation, Plaintiff Caceres had more than 15 years of experience in catering. Her starting hourly rate of pay was $24.00 per hour. Over the course of 11 years, small increases brought that rate to $32.00 an hour – the most significant of which occurred after this original action as filed.

46.     Throughout Plaintiff Caceres's employment, she was paid less as an hourly rate than her younger white male counterparts – even though they had less experience in the service and hospitality industry.

47.     Throughout her employment at Constellation, Plaintiff Caceres failed to receive promotions, job opportunities, and pay commensurate with her experience in the industry and with her experience and performance with Defendants.

48.     On or about May or June 2017, Plaintiff Caceres complained to Zimmerman and John Chacon (Booking Manager for Constellation) about discrimination based on unequal pay, noting that younger white employees were paid more than older and minority employees.  Plaintiff Caceres also complained about discrimination in scheduling, noting that younger white employees received better work assignments and more double shifts than female, older, and minority employees. Chacon refused to address Plaintiff Caceres's concerns and told her to mind her own business. Chacon admitted his preference was to schedule younger employees on double shifts and claimed the younger employees could handle double shifts better than older employees.

Zimmerman told Plaintiff Caceres that she should be happy to have a job at all, and Chacon could assign work however he saw fit.

49.     Thereafter, in retaliation for Caceres's complaints of discrimination, Zimmerman and Chacon reduced the number of work assignments given to Plaintiff Caceres. Additionally, when Plaintiff Caceres did work, Zimmerman and Chacon consistently treated her in a rude and condescending manner and made repeated negative references to her Spanish accent. They also repeatedly assigned Plaintiff Caceres to perform undesirable set-up duties, such as moving tables and chairs. While Plaintiff Caceres performed such tasks, younger employees were frequently allowed to remain idle.

50.     On or about June 2017, Plaintiff Caceres's partner, Arthur Clemente, contacted Constellation's Human Resources Department to complain on her behalf about the discrimination and retaliation she had suffered at work. As a result, on June 19, 2017, a meeting was held at the New York Historical Society Museum and Library to address Plaintiff Caceres's concerns. Attendees at the meeting were Plaintiff Caceres, Deena Earland Perez (Director of Human Resources), Chacon, and Zimmerman. Plaintiff Caceres requested the following issues be addressed: (1) Pay disparity between Plaintiff Caceres versus less experienced younger white employees, and (2) Work scheduling where Plaintiff Caceres was never offered double shifts while less experienced and shorter tenured younger white male employees were given double shifts. None of these issues were resolved after this meeting, and the only significant change was that Plaintiff Caceres was given a 25-cent raise.

51.     Over the past couple of years due to the inexperience of new hires, Constellation has leaned on Plaintiff Caceres to train and help new banquet servers during actual events. Constellation recognizes Plaintiff Caceres's experience and knowledge as they allow her to train

new employees but have not recognized Caceres additional duties via promotion or monetarily.

52.    Plaintiff Caceres was paid significantly less as an hourly rate of pay than her substantially similar younger white, male counterparts.

*Yonas Berhe*

53.    Plaintiff Yonas Berhe is a 43-year-old African American man who lives and resides in New York County, in the state of New York, and is a citizen of the United States.

54.    Plaintiff Berhe began his employment with Constellation and its predecessor entities in 2014. Plaintiff Berhe initially worked as a server, where he was paid $21.00 per hour, but beginning in 2015 he was also assigned to work as a wedding attendant for a substantially similar hourly wage.

55.    Like other minority employees employed by Constellation, Plaintiff Berhe was frequently assigned jobs at the New York Botanical Garden in the Bronx and away from the more prestigious and profitable Manhattan-based events and functions. Minority workers made up a greater percentage of the staff assigned to Bronx events than those assigned to Manhattan events. These Bronx-based jobs required greater travel costs, resulted in lesser tips, and resulted in Plaintiff Berhe earning even less than an equivalent hourly rate.

56.    At all relevant times, Constellation paid its predominately white employees who worked Manhattan-based events a greater hourly rate than its predominately minority employees who worked Bronx-based events.  Plaintiff Berhe and many other Constellation event employees knew about this, as it was common for the staff to talk amongst themselves regarding their compensation.

57.    Throughout 2015, Plaintiff Behre, Plaintiff Caceres, Miguel Valencia, Sasha Forester, Jonathan Espinoza, and many other minority employees complained to Stephanie Hill

(Banquet Manager) about the pay disparity between Bronx-assigned and Manhattan-assigned employees. Hill's common refrain was that pay rates were out of her control and were determined by Zimmerman.

58.     In approximately January 2016, Zimmerman met with the Bronx-assigned employees for a training session. During this meeting, Brandon (last name unknown, perhaps Link), a server, complained about the pay disparity between Bronx-assigned employees, who were paid on average $20.00 per hour, while similarly situated (and predominately white) Manhattan-assigned employees were paid on average $25.00 per hour. Zimmerman snidely remarked, "Stop complaining. Most of your friends work at McDonalds. You should be happy." Given that the meeting participants were predominantly minorities, this was an apparent reference to the stereotype that minorities are limited to working low wage or fast-food jobs. One or multiple employees asked Zimmerman why she would say such a thing; Zimmerman insisted the employees made "good money," and changed the subject. This exchange was witnessed by Plaintiff Berhe, Jonathan Espinoza, Angelo (last name unknown, perhaps Ortiz), Brandon Morales, Kimberly Karo, and Jeff Jefferson (prospective employee).

59.     During that same training session, Plaintiff Berhe also complained to Zimmerman about the pay disparity between Bronx-assigned and Manhattan-assigned employees. Zimmerman claimed Manhattan-assigned employees were paid more because Manhattan events charged more per plate and refused to further engage Plaintiff Berhe.

60.     Zimmerman's claim that plate cost determined hourly rate was demonstrably false. When a Bronx-based event was understaffed, which was common, Constellation would schedule its predominately white employees who worked Manhattan-based events to fill in, who were then paid their normal hourly rate. Thus, although the predominately white employees were performing

duties identical to those of the predominately minority employees at the same event, they received greater compensation (e.g., approximately $21.00 per hour vs. approximately $26.00 per hour). In addition, they were also provided with travel reimbursement, which was not provided to their similarly situated counterparts.

61.     In or about 2016, Plaintiff Berhe complained to Simon Powles (President and CEO of Starr Catering) that minority employees were paid less than white employees, explaining the pay and demographic disparity between Manhattan and the Bronx. Simon then turned to Zimmerman and stated words to the effect of, "I don't know what is going on here, but you need to fix this." This was witnessed by Laura Bass (Sales Director), Lauren O'Kelly (Sales Manager), and John (last name unknown) (Sales Manager).

62.     Shortly after Plaintiff Berhe's complaint to Simon, and in apparent response to it, Constellation provided pay raises to many Bronx-assigned employees, bringing their pay closer in line to the predominately white Manhattan-assigned employees. However, a few months later, Constellation provided raises to Manhattan-assigned employees, thus reimposing the unequal pay gap.

63.     In approximately 2019, whenever Plaintiff Berhe was unavailable to work due to pre-planned vacation or other time off, Constellation began assigning Grayson Lewis (white employee) to fill in for Plaintiff Berhe's role as wedding attendant. For this work, Lewis was paid his normal hourly rate of $45 to $50 per hour, which was in sharp contrast to the $30 per hour Plaintiff Berhe was paid.

64.     In addition to the above complaints, Plaintiff Berhe has made numerous other attempts to address his concerns about unequal pay with Constellation. For example, in September 2018, Plaintiff Berhe asked Chacon for a review, hoping to receive a raise that would bring his pay

in line with similarly situated white employees. Chacon told Plaintiff Berhe he would have to wait until January 2019, as that is when his review would be held. No review was held, so Plaintiff Berhe broached the topic with management in March 2019, who told him he would have to wait for a new payroll system to be updated. There was no resolution, so Plaintiff Berhe asked Zimmerman for a review in April 2019. Either Chacon or Zimmerman texted Plaintiff Berhe later that month, claiming a review would be held soon. That never happened, so Plaintiff Berhe emailed Zimmerman for an update in late May 2019. Again, Plaintiff Berhe was ignored. Plaintiff Berhe then reached out to Katie Cuellar (General Manager), who told him management would follow up with him. Plaintiff Berhe was ignored yet again. Finally, in November 2019, Zimmerman advised that an increased rate of pay may be unfeasible, claiming that Plaintiff Berhe was compensated at the top of the pay scale, noting Plaintiff Berhe was paid $30 per hour as a wedding attendant, and $25 per hour as a server. This was demonstrably false, given that similarly situated younger white employees were paid approximately $28 per hour as servers, and substantially more than $30 per hour as wedding attendants, including persons who had not been trained and had been assigned to the positions for the first time.

65.    In December 2019, in retaliation for Plaintiff Berhe's numerous complaints about unequal pay, Constellation refused to schedule Plaintiff Berhe for any wedding events, despite the fact Plaintiff Berhe had previously worked approximately 90% of the wedding events in the Bronx.

66.    In January 2020 Plaintiff Berhe filed a complaint with the EEOC (Charge No. 520-2020-01576), alleging that minority employees were paid less than white employees.

67.    In March 2020, Constellation furloughed Plaintiff Berhe and other staff in response to the Covid-19 pandemic.

68.    In May 2021, after Constellation began rehiring staff it had furloughed, Plaintiff

Berhe repeatedly emailed Terry Gsell (Constellation Service Director), indicating his desire to return to work.  All of these emails were ignored, and Plaintiff Berhe was never rehired by Constellation.  Similarly situated employees who did not complain about unequal pay were rehired, thus evidencing that Constellation's failure to rehire Plaintiff Berhe was in retaliation for his many protected activities.

69.    Plaintiff Berhe was paid significantly less as an hourly rate of pay than his substantially similar white, male counterparts.

70.    Throughout his employment at Constellation, Plaintiff Berhe failed to receive promotions, job opportunities, and pay commensurate with his experience in the industry and with his experience and performance with Defendants.

*Astrid Cousins*

71.    Plaintiff Astrid Cousins is an African American woman who lives and resides in Bronx County, in the state of New York, and is a citizen of the United States.

72.    Plaintiff Cousins was employed by Constellation from approximately 2017 until 2020, in roles associated with service work, including as a catering server at Defendants' catered events and venues.

73.    During her employment, she was paid approximately $25 per hour, which was significantly less than her white, male counterparts.

74.    Plaintiff Cousins failed to receive appropriate pay raises during the three years she worked for Defendants.

75.    Throughout her employment at Constellation, Plaintiff Cousins failed to receive promotions, job opportunities, and pay commensurate with her experience in the industry and with her experience and performance with Defendants.

*Samara Greco*

76.    Plaintiff Samara Greco is an African American woman who lives and resides in Bronx County, in the state of New York, and is a citizen of the United States.

77.    Plaintiff Greco was employed by Constellation and its predecessor entities from approximately 2015 to 2020, in roles associated with service work, including as a catering server at Defendants' catered events and venues.

78.    When starting for Defendants she was paid approximately $25 per hour, which was significantly less than her white, male counterparts, and received minimal incremental increases of around 50 to 75 cents approximately once a year.

79.    Plaintiff Greco eventually received pay of around $27.75 towards the end of her tenure with Defendants.

80.    Plaintiff Greco was frequently rated by her higher-ups including event captains as a reliable server and received five-star ratings at many of Defendants' catered events. She was also given responsibilities such as being assigned to VIP tables.

81.    Despite her work-ethic and performance reviews, Plaintiff Greco was overlooked for promotions such as event captain for approximately the first three years of her tenure with Defendants.

82.    When finally being offered a captain position in approximately 2019, Plaintiff Greco received little to no training despite her younger white male counterparts receiving training. Plaintiff Greco was only offered a rate of $28 per hour as captain, a few dollars more than her server rate, despite her experience and dramatic increase in responsibility for running Defendants' catered events.

83.    During her tenure with Constellation, Plaintiff Greco lived in Brooklyn, NY.

Despite her place of residence, Plaintiff Greco was frequently assigned jobs at the New York Botanical Garden in the Bronx and away from the more prestigious and profitable Manhattan-based events and functions which were more conveniently located for Plaintiff. Minority workers made up a greater percentage of the Bronx-assigned staff than the Manhattan-assigned staff. These Bronx-assigned jobs required greater travel costs, resulted in lesser tips, and resulted in Plaintiff Greco earning even less than an equivalent hourly rate.

84.     Throughout her employment at Constellation, Plaintiff Greco failed to receive promotions, job opportunities, and pay commensurate with her experience in the industry and with her experience and performance with Defendants.

85.     At all relevant times, Constellation paid its predominately white employees who worked Manhattan-based events a greater hourly rate than its predominately minority employees who worked Bronx-based events like Plaintiff Greco.

**<u>Defendants</u>**

86.     Upon information and belief, Defendant Constellation Culinary Group is a corporate entity existing under the laws of the State of New York with a place of business at 667 N Broad St., Philadelphia, PA 19123, and a primary NYC address at 881 7th Ave., New York, NY 10019.

87.     Upon information and belief, Defendant Galaxy Restaurants Catering Group, LP is a domestic corporate entity existing under the laws of the State of New York with a place of business at 881 7th Ave., New York, NY 10019 and with a registered agent of Corporate Creations Network Inc. at 15 North Mill Street, Nyack, NY 10960.

88.     Upon information and belief, Defendant Starr Events is a corporate entity existing under the laws of the State of New York with a primary place of business in New York at 881 7th Ave., New York NY 10019.

89.     Upon information and belief, Defendant Elior North America is a corporate entity existing under the laws of the State of New York with a primary place of business address at 300 S Tryon St. # 400, Charlotte NC 28202.

90.     Upon information and belief, Defendant Elior North America maintains control, oversight, and direction over the operation of its facilities, including its employment practices at the corporate entities that operate under the "Stephen Starr", "Abigail Kirsch"[3], and "Constellation" catering brand, including Constellation Culinary Group, Galaxy Restaurants Catering Group, LP, and Starr Events.

91.     The names of the various corporate entities operating these catering companies and brands are not known to Plaintiffs, given the nature of the relationship as food service workers at Constellation's events and locations.

92.     Upon information and belief, Defendants operate numerous other entities and enterprises that operate as part of a corporate enterprises that employed catering workers and hosted catered events during New York since 2008[4].

93.     Since 2018, these entities have operated as "Constellation", which was described as "rebranded to highlight what makes us special: our people."

94.     The names of all such entities are not known to the Plaintiffs.

95.     Defendants and these entities jointly employed Plaintiffs in the performance of their job duties and responsibilities and are referred to herein as "Constellation".

---

[3] According to Defendants' website, "[In] 2016, Elior, NA creates a Dining & Events Group and acquires Abigail Kirsch…" *See* https://constellationculinary.com/wp-content/uploads/2018/11/CCG_OurCompany_OurJourney.pdf
[4] *See e.g.,* https://constellationculinary.com/wp-content/uploads/2018/11/CCG_OurCompany_OurJourney.pdf ; *see also* https://constellationculinary.com/our-company/ (representing in 2015 that "In 2015, we made our biggest connection: with our parent company, Elior Dining & Events").

96.     During all relevant times, Constellation was Plaintiffs' employer within the meaning of all applicable statutes.

97.     Defendants maintain control, oversight, and direction over the operation of its facilities, including its employment practices at the catered events held in New York, including those at Carnegie Hall, New-York Historical Society, the New York Botanical Garden, and other private and public spaces in the greater NYC area, Long Island, and Westchester County.

98.     During all relevant times, Defendants were Plaintiffs' employers within the meaning of all applicable statutes.

99.     On information and belief, at all times pertinent hereto, Defendants have employed more than five hundred people in catering and service work under its various brands in New York state and in New York City.

## JURISDICTION AND VENUE

100.    This Court has jurisdiction over Plaintiffs' Equal Pay Act Claims under 29 U.S.C. 206(d), as well as jurisdiction of the NY Equal Pay Act, NYSHRL and NYCHRL claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

101.    This is a putative class action in which: (l) there are 100 or more members in the Class; (2) at least some members of the proposed class have a different citizenship from at least one Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

102.    Plaintiff Caceres is a resident of New Jersey, and Defendants are foreign and domestic business entities, including entities that are not known to the Plaintiffs.

103.    Venue is proper in this judicial district under 28 U.S.C. § 139l(b)-(c) because Defendants conduct business and can be found in this district and a substantial part of the events

and omissions giving rise to the claims alleged herein occurred in this district, and because the

alleged unlawful employment practice was committed here, and employment records relevant to

that practice are maintained and administered here.

104.    All other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

105.    Constellation prides itself on its service and interacts with the public primarily

through its service workers, who include the Plaintiffs here.

106.    However, despite that and at the service worker level, Constellation and its

predecessor entities discriminate against older workers and minorities in (1) compensation; (2)

promotions; (3) frequency of work, (4) location of work performed, (5) positions, and (6) other

factors related to business opportunities including systemically ranking minority, female, and older

workers lower in Defendants system.

107.    These critical issues impacted and did substantial damage to Plaintiffs and other

service workers at Constellation.

### Compensation

108.    A few extra dollars per work hour can make the difference between workers on the

edge of financial struggle and those able to ultimately be successful[5].

109.    Minority, female, and older service workers systematically were paid less in hourly

compensation and failed to receive raises at the same rate as their white, male peers.

110.    Minority, female, and older service workers were paid substantially less as an

hourly rate of pay than substantially similar workers that were white, male, and younger.

111.    Younger white male service workers were paid at a higher hourly rate and received

---

[5] *See e.g.*, https://www.senatormensch.com/wp-content/uploads/sites/17/2019/08/sb06-articles.pdf

raises at more frequent intervals and when those raises occurred, they received a greater percentage of hourly wage raises.

112.    For example, younger white male service workers would receive annual or biannual raises of between $1 to $2 per hour – while older, female, and/or minority workers would receive raises every few years of between $0.25 or $0.50 per raise.

113.    On average, younger white male service employees for Constellation were paid significantly more, including a few dollars per hour.

114.    Some minority, female, and older service workers worked years without any raises.

**Promotions and Positions**

115.    Older, female, and minority service workers at Constellation and its predecessor entities were routinely passed over for promotions or were kept in basic service positions, while their younger white male counterparts were promoted to bartender and/or captain.

116.    In fact, on the occasions that Constellation promoted older, female, and minorities to captain, they had to either accept a lower hourly rate or reject the promotion – or were permitted to work those positions in a temporary role and then return to their server positions. Typically, they were required to continue working as servers as needed. Examples of minorities subjected to this requirement include Chris Pineda and Kenn Cusicanqui. Similarly situated younger white male employees, such as Greyson Lewis and Zach Barnes, were rarely subject to this requirement.

117.    Similarly, younger white male service workers were placed in positions that paid significantly more per hour than other positions, while minorities were positioned or given labels in different positions that paid less – even though the work was nearly identical.

118.    For example, despite performing identical service work at catered events, younger white male servers were labeled or hired as "captains", which meant they would serve the same

food, same drinks at the same event, for considerably more money.

119.    The captain label was meaningless designation, except as a ruse to pay younger, white males more.

120.    The service work of a captain and banquet waiter was substantially similar and nearly identical.

121.    As another example, minority, female, and older service workers were assigned to positions like Café Servers at Defendants' counter service locations, wherein those workers would be paid less and would receive less in tips and gratuities, for the same work.

**Frequency of Work**

122.    Service workers in the catering and hospitality industry often do not receive steady Monday through Friday work – or consistent set weekly hours, and are subject to the whims of schedulers, their biases, and internal policies and practices of the companies they work for.

123.    Numerous localities have passed work scheduling laws[6] to ensure that workers receive a work schedule that allows them to plan around their other obligations.

124.    For service workers in the catering and hospitality industry, the difference between receiving regular work is the difference between needing to take two or three other jobs to receive the same amount of weekly or monthly compensation.

125.    At Constellation, minority, female, and older service workers received job assignments on a less frequent basis and were often overlooked for work in favor of younger white male service workers.

---

[6] https://www.vox.com/future-perfect/2019/10/15/20910297/fair-workweek-laws-unpredictable-scheduling-retail-restaurants ("Policymakers are starting to pay attention to this problem. Over the past three years, Oregon and a wave of cities including Seattle, San Francisco, Philadelphia, Chicago, and New York City have passed 'fair workweek' legislation that aims to make schedules more predictable (or compensate workers when they are unpredictable).").

126.    Older, female, and minority service workers for Constellation would receive fewer job assignments, even if they had extensive catering experience and experience working Constellation-run events, in favor of younger white male service workers.

127.    Minority, female, and older service workers were ranked statistically lower within the catering software, such that they would receive jobs less frequently and be lower on the queue to receive prime events.

128.    For example, if Constellation had an event that needed 20 servers, they would first offer those jobs to the waiters and servers with the higher rankings within the scheduling software – e.g., the Starr Rating system. So that 5 Starrs and 4 Starrs workers would receive offers of the job before those with lower rankings.

129.    The minority, female, and older workers were rated lower within that Starr Rating system.

130.    Minority, female, and older service workers received fewer job opportunities than their comparable younger white male counterparts.

131.    Upon information and belief, Constellation implemented these policies and practices to appeal to biases that it believed would help ensure Constellation would be utilized as a cater or manager for other catered events.

**Location of Work**

132.    Constellation caters events in New York at some of the most prestigious and exclusive venues and locations, including at iconic venues and private events at apartment buildings or homes.

133.    Constellation regularly deployed its minority, female, and older work staff to events away from Manhattan and into the outer boroughs.

134.    Not only would they travel to outer boroughs increase the transportation costs on the service workers working those events, Manhattan-based events were often the source of increased tips from patrons and/or their guests. Thus, Manhattan-based events were more prestigious and economically profitable.

**Loss of Other Business Opportunities**

135.    Upon information and belief, patrons or hosts at prominent NYC locations would frequently request certain service workers or hire them directly for additional events.

136.    Because minority, female, and older workers were not assigned to prominent locations, they were less likely to be requested for the next event at that location by the patron or host of the party.

137.    Therefore, minority, female, and older service workers missed out on those additional business opportunities.

138.    Because minority, female, and older workers were typically assigned to the Bronx Botanical Gardens that were typically one-off events, patrons or hosts would not typically regularly book catered events or functions – or be repeat customers.

139.    Upon information and belief, there were less opportunities for business opportunities stemming from events at the Bronx Botanical Gardens.

**Conclusion**

140.    Accordingly, Plaintiffs bring this class action on behalf of themselves individually and all similarly situated older, female, and/or minority service workers employed by Defendants in New York.

141.    This action seeks to end Constellations' discriminatory policies, patterns, and/or practices and retaliation, and to make the Classes whole by requesting the following remedies:

injunctive relief to remedy systemic discrimination; an award of back pay and front pay; compensatory and punitive damages; attorney's fees, and other relief that may be just and proper.

<u>**CLASS ACTION ALLEGATIONS**</u>

142.    Plaintiffs bring this Class Action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a Class of female, older, and/or minority service employees in New York at any time from April 21, 2016, through the resolution of this action.

143.    Plaintiffs and Defendants, through their respective counsel, entered into a written Tolling Agreement on May 19, 2022, which tolled the statute of limitations from April 26, 2022, through December 3, 2025, for Plaintiffs including those similarly situated individuals.

144.    The Tolling Agreement was entered in by the Parties to suspend the running of the applicable statute of limitation, statutes of repose, notice, or other time-related defenses or limitations, to permit the Parties to attempt resolution in a private mediation and settlement discussions.

145.    The Parties mediated the matter multiple times before Mediators Martin F. Scheinman and Barry Peek.

146.    On Nov. 3, 2025, Plaintiffs terminated the Tolling Agreement, which required Plaintiffs to wait 30 days before filing this matter.

147.    Plaintiffs would propose the following classes:

   1.   Race Classes: Plaintiffs seek to maintain claims on behalf of a class of minority Hispanic employees, Black or African-American, and/or non-Caucasian workers who have been, are now, or will be employed by Defendants as service employees.

   2.   Age Class: Plaintiffs seek to maintain claims on behalf of a class of older

employees who have been, are now, or will be employed by Defendants as service employees.

3. Gender Class: Plaintiffs seek to maintain claims on behalf of a class of female employees who have been, are now, or will be employed by Defendants as service employees.

148.    Plaintiffs reserve the right to amend the definition of the Classes based on discovery or legal developments.

149.    All Plaintiffs are members of the Class they seek to represent.

150.    The members of the Classes identified herein are so numerous that joinder of all members is impracticable.

151.    Since at least 2016, Constellation has employed several hundred minority, female, and/or older service workers for its catered events in New York.

152.    There are questions of law and fact common to the Classes, and these questions predominate over any questions affecting only individual members.  Common questions include, among others:

(a)    Whether minority, female, and older service workers were paid less on average than younger, male white service workers;

(b)    Whether minority, female, and older service workers were promoted less frequently than their younger, white male counterparts;

(c)    Whether minority, female, and older service workers were assigned jobs less frequently than their younger, white male counterparts;

(d)    Whether minority, female, and older service workers were subject to the disparate impact of Defendants' policies of favoring younger, white male service workers;

(e)    Whether minority, female, and older service workers were denied advancement and business opportunities in a disproportionate amount when compared with their, younger, white male counterparts; and

(f)    Whether minority, female, and older workers were systemically rated lower in Defendants system;

(g)    And other legal and factual questions.

153.    The Representative Plaintiffs claims are typical of the claims of the Class.

154.    The Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes they seek to represent.

155.    Plaintiffs have retained counsel that is competent and experienced in class actions, employment discrimination litigation, and the intersection thereof.

156.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Constellation has acted and/or refused to act on grounds generally applicable to the Classes, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

157.    The Class Members are entitled to injunctive relief to end Constellation's common, uniform, unfair, and discriminatory policies, and practices.

158.    Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Constellation's common, uniform, unfair, and discriminatory policies and practices.

159.    Constellation has complied with Labor Law § 195 to maintain all pay, time, and tip records for Plaintiffs and Class Members.

160.    Constellation has complied with 12 NYCRR § 146-2.1, 2.2, 2.17, and 2.18 to maintain all pay, time, and tip records for Plaintiffs and Class Members.

161.    Such computerized account data, payroll data, and personnel data that will make calculation of damages for specific Class Members relatively simple.

162.    The propriety and amount of punitive damages are based on Constellation's conduct, making these issues common to the Class.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### NY EQUAL PAY ACT, Labor Law § 194
### (On Behalf of Plaintiffs and the Race, Gender, and Age Classes)

163.    Plaintiffs incorporate the preceding paragraphs as alleged above.

164.    This Claim is brought by all Representative Plaintiffs on behalf of themselves and the Age and Race Class they seek to represent.

165.    This Claim is also brought by Plaintiffs Alleyne, Herman, Caceres, Cousins, and Greco on behalf of themselves and the Gender Class they seek to represent.

166.    The claims brought herein under New York Labor Law § 194 are brought on behalf of the Plaintiffs and members of the Race, Gender, and Age Classes.

167.    During the period of the employment of Plaintiffs and the members of the Age, Gender, and Race Classes, Defendants were subject to the provisions of the New York Labor Law § 194.

168.    During the employment of Plaintiffs and the members of the Race, Gender, and Age Classes, Defendants required Plaintiffs and the members of the Classes to perform the same or substantially the same job position as younger white male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiffs and the members of the Race, Gender, and Age Class at a rate of pay, including salary and bonus, less than younger male white employees.

169.    The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor

other than age, race, gender, or other protected class, such as education, training, or experience.

170.    Defendants engaged in patterns, practices and/or policies of employment which willfully, and in the alternative unwilfully, discriminated against Plaintiffs and the members of the Race, Gender, and Age Classes by paying them a lesser rate of pay, including salary and bonus, than that paid to younger white male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

171.    By the actions described above, among others, Defendants have violated the New York Labor Law.

172.    Constellation has engaged in a company-wide, and systematic policy, pattern, and/or practice of discrimination against its older and minority service workers.

173.    As a direct result of Constellation's discriminatory policies and/or practices as described above, Plaintiffs and the Classes have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

174.    The foregoing conduct constitutes illegal discrimination and unjustified disparate treatment prohibited by Labor Law § 194.

175.    Plaintiffs request relief as hereinafter described, including for unpaid wages, damages, interest, penalties, attorney's fees, and other amounts authorized by law.

**SECOND CLAIM FOR RELIEF**
**Discrimination**
**(NYCHRL, New York City Administrative Code § 8 101 et seq.)**
**<u>(On Behalf of Plaintiffs and the Age, Gender, and Race Classes)</u>**

176.    Plaintiffs incorporate the preceding paragraphs as alleged above.

177.    This Claim is brought by all Representative Plaintiffs on behalf of themselves and the Age and Race Classes they seek to represent.

178.    This Claim is also brought by Plaintiff Alleyne, Herman, Caceres, Cousins, and Greco on behalf of themselves and the Gender Class they seek to represent.

179.    Constellation has engaged in a company-wide, and systematic policy, pattern, and/or practice of discrimination against its older, female, and minority service workers.

180.    Constellation has discriminated against Plaintiffs and the Class in violation of the NYCHRL by, among other things: paying Class Members less, promoting them less frequently, providing them with work opportunities less frequently, increasing their pay less frequently and in smaller amounts, and other issues outlined in the allegations above.

181.    These company-wide policies have the effect of:

(a)    Denying Plaintiffs and Class Members business opportunities because of their race, gender, and age;

(b)    Compensating them less because of their race, gender, and age;

(c)    Failing to promote or hire them for specific positions because of their race, gender, and age;

(d)    Evaluating their performance more negatively because of their race, gender, and age;

(e)    Offering them less administrative support, training, and mentorship because of their race, gender, and age; and

(f)    Providing them with inferior terms and conditions of employment because of their race, gender, and age.

182.    The discriminatory acts that constitute Constellation's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

183.    Constellation has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the City of New York, and the discriminatory policies, patterns, and/or practices have had a discriminatory impact on older, female, and

minority employees of Constellation within the City of New York.

184.    As a direct result of Constellations' discriminatory policies and/or practices as described above, Plaintiffs and the Classes have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

185.    The foregoing conduct constitutes illegal discrimination prohibited by the Administrative Code of the City of New York § 8-107 et seq.

186.    Plaintiffs request relief as hereinafter described.

### THIRD CLAIM FOR RELIEF
### Disparate Impact Discrimination
### (NYCHRL, New York City Administrative Code § 8-101 *et seq.*)
### <u>(On Behalf of Plaintiffs and the Race, Gender, and Age Classes)</u>

187.    Plaintiffs incorporate the preceding paragraphs as alleged above.

188.    This Claim is brought by all Representative Plaintiffs on behalf of themselves and the Classes they represent.

189.    This Claim is also brought by Plaintiff Alleyne, Herman, Caceres, Cousins, and Greco on behalf of themselves and the Gender Class they seek to represent.

190.    Constellation has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

191.    Constellation has set and/or maintained these discriminatory policies, patterns, and/or practices during the liability period within the City of New York and the discriminatory policies, patterns, and/or practices have had a discriminatory impact on older and minority employees of Constellation within the City of New York.

192.    As a direct result of Constellation's discriminatory policies and/or practices as described above, Plaintiffs and the Class have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

193.    The foregoing conduct constitutes illegal discrimination prohibited by the Administrative Code of the City of New York § 8-101 et seq.

194.    Plaintiffs request relief as hereinafter described.

**FOURTH CLAIM FOR RELIEF**
**NYS Executive Law**
**(On Behalf of All Plaintiffs individually and the Class)**

195.    Plaintiffs incorporate the preceding paragraphs as alleged above.

196.    Defendants have discriminated against Plaintiffs and the members of the Race Class on the basis of their race, ethnicity and/or national origin, the Gender Class on the basis of their gender, and the Age Class on the basis of their age in violation of the NYSHRL by denying the respective classes the same terms and conditions of employment available to employees who are white, female, and/or younger, including, but not limited to, subjecting them to disparate working conditions and compensation.

197.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation the NYSHRL, Plaintiffs and the members of the Race Class, Gender Class, and/or Age Class have suffered and continue to suffer monetary and/or economic harm for which they are entitled to an award of damages.

198.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiffs and the members of the Race Class, Gender Class, and/or Age Class have suffered, and continue to suffer, emotional distress for which they are entitled to an award of compensatory damages.

199.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiffs' and the Race Class, Gender Class, and/or Age Class's rights under the NYSHRL, for which Plaintiffs and the Race Class

and/or Age Class are entitled to an award of punitive damages.

**FIFTH CLAIM FOR RELIEF**
**Equal Pay Act of 1963 Claims**
**<u>(On Behalf of Plaintiffs Alleyne, Herman, Caceres, Cousins, and Greco,</u>**
**<u>individually and the Gender Class)</u>**

200.    Plaintiffs incorporate the preceding paragraphs as alleged above.

201.    Defendants have discriminated against Plaintiffs and the members of the Gender Class on the basis of their gender or sex in violation of the Equal Pay Act of 1963 and its subsequent amendments by denying the respective class the same wage compensation for equal work available to employees who are female, including, but not limited to, paying females less than males for equal work.

202.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation the Equal Pay Act (including as codified in 29 USC 206 et seq.), Plaintiffs and the members of the Gender Class have suffered and continue to suffer monetary and/or economic harm for which they are entitled to an award of damages.

203.    Subsection (d) of § 206 states:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

204.    Defendants, including Constellation, are employers within the definition of the Act, and Plaintiffs are employees.

205.    Plaintiffs Alleyne, Herman, Caceres, Cousins, and Greco and similarly situated workers

have not been properly compensated at the correct rate of pay for the performance of their work, namely because female workers have been paid statistically less than their male counterparts for equal work – including service work at the same events and for the same caterer.

206.    None of the exceptions of the Equal Pay Act apply to Defendants and the catering or food service workers of Constellation.

207.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiffs Alleyne, Herman, Caceres, Cousins, and Greco and the members of the Gender Class have suffered, and continue to suffer, emotional distress for which they are entitled to an award of damages.

## ALLEGATIONS REGARDING RELIEF

208.    Plaintiffs and the Classes they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the one means of securing complete and adequate relief.

209.    Plaintiffs and the Classes they seek to represent are now suffering and will continue to suffer irreparable injury from Constellations' discriminatory acts and omissions.

210.    Constellations' actions have caused and continue to cause Plaintiffs and all Class Members substantial losses in earnings and other employment benefits.

211.    In addition, Plaintiffs and Class Members suffer and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

212.    Constellation performed the acts herein alleged with malice or reckless indifference. Plaintiffs and Class Members are thus entitled to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

213.    WHEREFORE, Plaintiffs and the Class pray for relief as follows:

(a)    Certification of the case as a class action and/or collective action on behalf of the proposed Classes;

(b)    Designation of Representative Plaintiffs ALLEYNE, HERMAN, CACERES, BERHE, COUSINS, and GRECO as representatives of the Classes;

(c)    Designation of Representative Plaintiffs' counsel of record as Class Counsel;

(d)    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, et seq.; and the Administrative Code of the City of New York § 8-107 et seq.;

(e)    A preliminary and permanent injunction against Constellation and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or the Classes because of their race, age, or participation in this lawsuit;

(f)    An order that Constellation institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race and age, and that it eradicates the effects of their past and present unlawful employment practices;

(g)    An order requiring Constellation to develop and institute objective standards for assigning job opportunities, determining rates of pay, and making promotion decisions;

(h)    An order appointing a monitor to ensure that Constellation complies with the injunction provisions of any decree that the Court orders;

(i)    An order retaining jurisdiction over this action to ensure that Constellation complies with such a decree;

(j)    An order restoring Plaintiffs and Class Members to their rightful positions at Constellation, or in lieu of reinstatements, an order for front pay benefits;

(k)    Back pay (including interest and benefits) for the Plaintiffs and Class Members;

(l)    All damages sustained as a result of Constellations conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(m)    Exemplary and punitive damages in an amount commensurate with Constellations' ability to pay and to deter future conduct;

(n)    Costs incurred herein, including reasonable attorneys' fees;

(o)    Pre-judgment and post-judgment interest, as provided by law; and

(p)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

214.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: Carle Place, New York
          December 3, 2025

**LEEDS BROWN LAW, P.C.**

_____/s/ Michael A. Tompkins_____
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Andrew Costello, Esq.
One Old Country Road, Suite 347
Carle Place, New York 11514
Tel: (516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
acostello@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Putative Class*